UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQWANNA HUGHES
O.B.O. D.H., A MINOR,

Plaintiff,

v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____/

Case No. 18-cv-14045

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [#17] AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [#23]**

Plaintiff Deqwanna Hughes, on behalf of D.H., a minor, ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").

Presently before the Court are cross motions for summary judgment.[1]  *See* ECF Nos. 17, 23.  Plaintiff filed her Motion for Summary Judgment on September 20, 2019.  ECF No. 17.  Defendant filed a separate Motion for Summary Judgment

_____

[1] On January 27, 2020, this Court rescinded the previous Order of Reference.  *See* ECF No. 24.

1

on December 23, 2019.  ECF No. 23.  For the reasons that follow, the Court will **DENY** Plaintiff's Motion for Summary Judgment [#17], **GRANT** Defendant's Motion for Summary Judgment [#23], and **AFFIRM** the ALJ's decision.

## I.   BACKGROUND

### A. Relevant Facts and Procedural History

D.H. is currently 13 years old.  ECF No. 12-2, PageID.55.  At the time of her hearing, Plaintiff claimed that D.H. has experienced "problems with comprehension and ability to retain learned material" since the age of 5 years and 10 months.  ECF No. 17, PageID.437.  D.H. has not engaged in substantial gainful activity since July 28, 2016.  ECF No. 12-2, PageID.55.  At the time of her hearing, D.H. was in fourth grade.  ECF No. 17, PageID.436.  She previously repeated the second grade.  *Id.*; *see also* ECF No. 17, PageID.439.

On the Disability Report, which was completed by Plaintiff, D.H. has hearing loss in her right ear and asthma.  ECF No. 12-6, PageID.291.  Plaintiff claims that D.H.'s disability began March 21, 2013.  *Id.*  However, Plaintiff states that "during the course of developing this case, and pursuant to the results of a psychological evaluation, an additional impairment has been documented, i.e., an 'intellectual disability.'" ECF No. 17, PageID.436.  In its decision, the ALJ determined that D.H. has the following severe impairments: right ear hearing loss, asthma, receptive language delay, and intellectual disorder.  ECF No. 12-2, PageID.56.

On July 28, 2016, Plaintiff filed an application for SSI on behalf of D.H.  ECF No. 17, PageID.436.  On October 27, 2016, the Commissioner initially denied this claim.  ECF No. 23, PageID.498.  Plaintiff then filed a written request for a hearing, which occurred on November 2, 2017 before ALJ Jeanne M. VanderHeide in Detroit, Michigan.  *Id.*  A supplement hearing, with testimony from medical expert James F. Wargel Ph.D., was held on January 16, 2018.  *Id.*

On March 14, 2018, the ALJ issued a decision, finding that D.H. was not disabled within the meaning of the Act from July 28, 2016 through the date of the decision.  *See* ECF No. 12-2.  The Appeals Council denied Plaintiff's request for review on October 26, 2018.  ECF No. 12-2, PageID.36.  Plaintiff now seeks review of the ALJ's decision by this Court.

### B. The ALJ's Decision

In making her determination, the ALJ utilized the regulatory three-step sequential evaluation process to determine whether D.H. is disabled.  20 CFR § 416.924(a)-(d).  The first step requires the ALJ to determine whether a child is engaged in any substantial gainful activity.  20 C.F.R. § 416.924(b).  At the second step, the ALJ determines whether the child has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.924(c).  The third step requires the ALJ to determine whether the child's impairment(s) meets, medically equals, or functionally equals the criteria of any impairment listed at 20 C.F.R. Part 404,

Subpart P, Appendix 1.   20 C.F.R. § 416.924(d).   If a child's impairment, or combination of impairments, medically meets or equals a listed impairment, the child will be found to be disabled.   20 C.F.R. § 416.926.   ECF No. 12-2, PageID.55.

At step one, the ALJ determined that D.H. did not engage in substantial gainful activity since July 28, 2016, which was her application date.   ECF No. 12-2, PageID.55.   At step two, the ALJ found that D.H. had the following severe impairments: right ear hearing loss, asthma, receptive language delay, and intellectual disorder.   *Id.* at PageID.56.   Despite this finding at step two, the ALJ concluded at step three that D.H. "does not have an impairment or combination of impartments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)."   *Id*.   In her explanation, the ALJ determined that D.H. did not have the following listed impairments: 102.10 (hearing loss not treated with cochlear implantation); 103.03 (asthma); 111.09 (communication impairment); and 112.05 (intellectual disability).   *Id.* at PageID.56–58.

The ALJ elaborated on her conclusion that D.H. does not meet listing 112.05, even accepting her full-scale IQ of 60.   *Id.* at PageID.56–58.   The ALJ explained that there was "no evidence in the record indicating significant deficits in adaptive functioning."   *Id.* at PageID.57.   The ALJ went on to explain that:

The record establishes the claimant has a wide range of age appropriate function. The claimant reported she has a best friend and likes to play jump rope. (Claimant Testimony). Dequanna Hughes, the claimant's mother, testified at the hearing as a witness on the claimant's behalf. Ms. Hughes report the claimant can answer the phone, understand oral instructions, express her own opinions, perform single step instructions and write letters. She likes to play outside with her brothers and cousins, run jump, and use scissors. She reported the claimant has friends and makes friends easily. She has had a best friend for 5 years. She cooperates with her parents and other adults. She can follow class rules and ask for permission. She can brush her teeth, bathe on her own, and eat a snack on her own. (Witness Testimony, Ex. B7E). A January 2017 IEP report noted that  the claimant was cooperative and participated in class and completed assignments. The examiner noted the claimant was making good progress in school and could stay on task. (EX. B18E/2-14). There is no evidence in the record establishing significant deficits in adaptive functions; as such, the claimant does not meet listing 112.05 even with a valid IQ Score of 60.

*Id.* at PageID.57–58.

Moreover, the ALJ determined that D.H.'s impairments did not functionally equal the severity of the Listings. *Id.* at PageID.58. Specifically, the ALJ found: a marked limitation for "acquiring and using information" (20 C.F.R. 416.926a(g)); less than marked limitations for "attending and completing tasks" (20 C.F.R. 416.926a(h)), "interacting and relating with others" (20 C.F.R. 416.926a(i)), "caring for oneself" (20 C.F.R. 416.926a(k)), and "health and physical well-being" (20 C.F.R. 416.929a(l)); and no limitation in "moving about and manipulating objects" (20 C.F.R. 416.926a(j)). As a result, the ALJ concluded that D.H. was not disabled

within the meaning of the Act from July 28, 2016, the date the application was filed,

through March 14, 2018, the date of the decision.  *Id.* at PageID.65.

## II.    STANDARD OF REVIEW

This Court has authority to review the Commissioner's final administrative

decisions on disability benefits pursuant to 42 U.S.C. § 405(g).  This Court has the

power "to enter . . . a judgment affirming, modifying, or reversing the decision of

the Commissioner of Social Security, with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g). However, the Court must "affirm the

Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported

by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

In deciding whether substantial evidence supports the ALJ's decision, the court does

"not try the case *de novo*, resolve conflicts in evidence or decide questions of

credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Review is limited in that this Court may only evaluate evidence in the record

when determining whether or not the ALJ's opinion was supported by substantial

evidence. *Bass*, 499 F.3d at 512–13. If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

## III.  ANALYSIS

In her Motion for Summary Judgment, Plaintiff argues that the ALJ erred in determining that D.H. (1) did not meet and/or at least equal a listed impairment in Appendix 1, Subpart P, Regulations No. 4, ECF No. 17, PageID.445, and (2) does not have an impairment or combination of impairments that functionally equals any of the listings, ECF. No. 17, PageID.457. Defendant maintains that the ALJ properly found at step two that D.H. had severe impairments. ECF No. 23, PageID.505. It argues, however, that substantial evidence supports the ALJ's findings that D.H. was not disabled under the requisite three-step sequential evaluation process for an individual under the age of eighteen. *Id.* at PageID.504.

In the third step of the sequential evaluation process, it is the claimant's burden to bring forth evidence to establish that her impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Hum. Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). To meet the requirements of a listed impairment, a plaintiff bears the burden of proof that all parts of a Listing's criteria are met. *See Sullivan*

7

*v. Zebley*, 493 U.S. 521, 530–32 (1990); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citation omitted).  An impairment that manifests only some of the criteria in a Listing, "no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.  Indeed, "[i]f all the requirements of the listing are not present, [the plaintiff] does not satisfy that listing."  *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002).

The Court will address each of Plaintiff's two arguments in turn.

**A. The ALJ Properly Determined That D.H. Does Not Have an Impairment Or Combination Of Impairments That Meets or Medically Equals the Listings**

The ALJ determined that D.H.'s impairments did not meet or medically equal any Listings.  ECF No. 12-2, PageID.56.  Specifically, the ALJ concluded that D.H.'s impairments did not meet or medically equal Listings 102.10 (hearing loss not treated with cochlear implantation); 103.03 (asthma); 111.09 (communication impairment); and 112.05 (intellectual disability).  *Id.* at PageID.56–58.  In her present Motion, Plaintiff exclusively argues that the ALJ lacked substantial evidence for finding that D.H.'s impairments did not meet or medically equal Listing 112.05.  ECF No. 17, PageID.446.  She does not challenge the ALJ's findings as to the other Listings.

Listing 112.05 provides as follows:

112.05 Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:

A. Satisfied by 1 and 2 (see 112.00H):
    1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

    2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.

OR

B. Satisfied by 1 and 2 (see 112.00H):
    1. Significantly subaverage general intellectual functioning evidenced by a or b:
        a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
        b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

    2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        a. Understand, remember, or apply information (see 112.00E1); or
        b. Interact with others (see 112.00E2); or
        c. Concentrate, persist, or maintain pace (see 112.00E3); or
        d. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05 (effective March 27, 2017).

The ALJ concluded that D.H. did not meet Listing 112.05 because the validity of the

October 2017 testing, which demonstrated a full-scale IQ score of 60, was disputed by a medical expert at the January 2018 supplemental hearing.  ECF No. 12-2, PageID.57.  Further, the ALJ determined that D.H. did not meet Listing 112.05 even accepting the full-scale IQ of 60 as a valid score because there was "no evidence in the record indicating significant deficits in adaptive functioning."  *Id.*

### 1.  Medical Expert's Testimony

Plaintiff first disputes the ALJ's reliance on Dr. James Wargel's allegedly "flawed" testimony at the January 2018 supplemental hearing, which questioned the validity of the full-scale IQ of 60.  ECF No. 17, PageID.454.  Specifically, Plaintiff avers that Dr. Wargel testified "without evidence to support his opinion."  *Id.* at PageID.447.

At the January 2018 supplemental hearing, Dr. Wargel testified that D.H.'s intellectual testing in October 2017 was not valid because there was evidence that D.H. had difficulties hearing and processing during the testing which was not accounted for during the examination.  ECF No. 12-2, PageID.85; *see also* ECF No. 12-2, PageID.57.  He explained that "it would be premature to come to the conclusion that [D.H.] qualifies as a person with intellectual disability in part because other areas of her functioning are so appropriate, and in part because we have a more parsimonious explanation for some for the learning issues and then of course part of the pattern of scores."  ECF No. 12-2, PageID.85–86.

In her present Motion, Plaintiff argues that Dr. Wargel's testimony did not address prior testing, which showed that D.H. was performing at a first-grade level in math and reading while she was in fourth grade.  Moreover, Plaintiff asserts that Dr. Wargel failed to address the fact that D.H. was "held back in second grade, which is consistent with the cognitive assessment."  ECF No. 17, PageID.448.  Plaintiff highlights D.H.'s Math and Reading scores from October 2017 according to the Northwest Evaluation Association's ("NWEA") Measures of Academic Progress ("MAP") test.  *Id.* at PageID.452–53.  D.H.'s teacher noted a Reading level of 165 on the Rasch UnIT ("RIT") MAP and a Math level of 169 on the RIT MAP.  ECF No. 12-6, PageID.341.  Plaintiff emphasizes that D.H.'s Reading level is "one point higher than the first grade level and her Math level places her into the first grade level.  ECF No. 17, PageID.452–53.  She argues that Dr. Wargel did not address these "academic problems."  *Id.* at PageID.454.

In its Response, Defendant points out that Dr. Wargel acknowledged D.H.'s test scores; however, he opined that these scores were inconsistent with other information in the record, including a teacher report and previous speech and language therapy test scores.  ECF No. 23, PageID.508–09; *see also* ECF No. 12-2, PageID.85–87.  The referenced teacher report from October 2017 indicated that D.H. had a higher level of functioning than someone with an intellectual disability.  ECF No. 12-6, PageID.342.  Specifically, D.H.'s teacher noted that Plaintiff either had

"no problem" or "a slight problem" with various tasks, including comprehending oral instructions ("a slight problem"); reading and comprehending written material ("a slight problem"); comprehending and doing math problems ("a slight problem"); understanding and participating in class discussions ("no problem"); providing organized oral explanations and adequate descriptions ("no problem"); and recalling and applying previously learned material ("a slight problem."). *Id.* Moreover, D.H.'s teacher explained that she is "independent in completing assignments[.]" *Id.*

Defendant also points out that Dr. Wargel testified about his concerns with the accuracy of the October 2017 testing in light of D.H.'s previous speech and language therapy test scores. ECF No. 23, PageID.509. At the January 2018 supplemental hearing, Dr. Wargel noted that D.H.'s speech and language scores were in the "low 80s," which is "below the average range or right at the end of the low average range." ECF No. 12-2, PageID.84. He also testified that D.H. seemed "to be making some progress." *Id.* Defendant further highlights that in the portion of the clinical testing where elements of a "cognitive impairment" or "specific learning disability" could have been noted in the report, they were not. *See* ECF No. 12-7, PageID.386. Instead, only D.H.'s hearing impairment was denoted in the report. *See id.*

The Court takes notice of Ms. Kristine Vichinsky's and Dr. Franklin Sollars' joint statement in response to Dr. Wargel's expert testimony. ECF No. 12-7,

PageID.410–17.  Ms. Vichinsky, who administered the IQ test, asserted that she accommodated D.H.'s hearing loss and she made D.H. comfortable during the testing.  ECF No. 12-7, PageID.412.  She stated:

> I did adjust during the testing to accommodate for the  child's hearing issue.  During the testing, I sat on her left side and gave directions for each subtest, to accommodate for the fact that her left ear has no hearing issues.  Doing so had no impact on the validity of the test scores.  Also, to state that I did not try to make the child comfortable during the testing based on her saying "are we done yet," is quite far-fetched.  Before I even start testing, I always make sure to build a rapport with my client, especially with children as this is an important factor to keep the child motivated and interested during testing.  In my experience in testing, most children do not enjoy doing testing for 2-5 hours of their day. … It is quite normal for a child to ask, "are we done yet," especially during a task that is considered, by most standards boring and not fun. I came to the observational conclusion that it was not the lack of a rapport between the examiner and [D.H.] that was an issue. It was her  current intellectual and adaptive functioning that is the issue.

*Id.*  The ALJ denoted this joint statement in her opinion.  The ALJ acknowledged that "Ms. Vichinsky opined the October 2017 evaluation was a valid assessment of [D.H.'s] psychological functioning" and cited to the statement in the record.  ECF No. 12-2, PageID.57.

Defendant persuasively argues that the ALJ was permitted to continue to rely on Dr. Wargel's testimony.  ECF No. 23, PageID.509.  The ALJ is not required to give controlling weight to the medical examiner's opinion, Ms. Vichinsky.  *See Bourdo v. Commissioner of Social Security*, No. 1:06-CV-862, 2008 WL 724722, at *3 (W.D. Mich. Mar. 17, 2008) (citing *Kornecy v. Commissioner*, 167 F. App'x 496, 507–08 (6th Cir. 2006)).  In the present matter, the Court cannot find that the ALJ

erred in according greater weight to the opinion of Dr. Wargel than to that of Ms. Vichinsky.   As Dr. Wargel pointed out, Ms. Vichinsky's conclusions were inconsistent with other information in the record, including a teacher report and previous speech and language therapy test scores.   Under such circumstances, this Court cannot conclude that the ALJ was not entitled to accept Dr. Wargel's opinion, even though he was a non-examining medical expert.   *See Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183 (Table), 1998 WL 381361, at *5 (6th Cir. June 25, 1998).

## 2.  Significant Deficits in Adaptive Functioning

Plaintiff also disputes the ALJ's conclusion relative to Listing 112.05(B)(2). To reiterate, the second prong of 112.05 requires the ALJ to look at significant deficits in adaptive functioning.   Plaintiff avers that D.H. has exhibited "all elements of [Listing 112.05], demonstrating the criteria needed for the impairment."  ECF No. 17, PageID.457.

The ALJ found that, even accepting the validity of the full-scale IQ score of 60, Plaintiff did not meet or equal Listing 112.05:

> The record establishes that the claimant has a wide range of age appropriate functioning.   The claimant reported she has a best friend and likes to play jump rope.   (Claimant Testimony).   Deqwanna Hughes, the claimant's mother, testified at the hearing as a witness on the claimant's behalf.   Ms. Hughes reported the claimant can answer the phone, understand oral instructions, express her own opinions, perform single step instructions, and write letters.   She likes to play outside with her brothers and cousins, run, jump, and use scissors.   She reported that claimant has friends and makes friends easily.   She has had a best friend for 5 years.   She cooperates with her parents and other

adults.  She can follow class rules and ask for permission.  She can brush her teeth, bathe on her own, and eat a snack on her own.  (Witness Testimony, Ex. B7E).  A January 2017 IEP report noted the claimant was cooperative and participated in class and completed assignments. The examiner noted the claimant was making good progress in school and could stay on task.  (Ex. B18E/2-14).

ECF No. 12-2, PageID.58.

In her present Motion, Plaintiff asserts that the ALJ incorrectly relied on "age-appropriate functioning" when determining that there was no evidence in the record indicating significant deficits in adaptive functioning.  ECF No. 17, PageID.456. Moreover, she argues that the ALJ ignored other record evidence which allegedly demonstrates D.H.'s significant deficits in adaptive functioning.  *Id.* at PageID.455. Specifically, Plaintiff points to speech and language reevaluations; Individualized Education Program ("IEP") reports; a Wide Range Achievement Test; and D.H.'s October 2017 examination before Ms. Vichinsky.  *Id.* at PageID.454–55.  She maintains that this record evidence shows limitations with (a) understanding, remembering, or applying information pursuant to 112.00E1, and with (c) concentrating, persisting, or maintaining pace, pursuant to 112.00E3.  *Id.* at PageID.454.

Defendant correctly points out that age-appropriate functioning can be considered when assessing adaptive functioning.  ECF No. 23, PageID.511 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(H)(3)(e)(ii) ("Our conclusions about your adaptive functioning rest on the quality of your daily activities and

whether you do them age-appropriately."). "Adaptative functioning" refers to how a claimant learns and uses "conceptual, social, and practical skills in dealing with common life demands." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(H)(3)(a). In her reasoning, the ALJ cited to several "conceptual, social, and practical skills," provided in the record, that demonstrate a lack of significant deficits in adaptive functioning. For example, the ALJ highlighted D.H.'s ability to, among other things, make friends, answer the phone, understand oral instructions, and write letters. ECF No. 12-2, PageID.57–58; *see also* ECF No. 12-2, PageID.111–14. These activities are demonstrative of D.H.'s "typical functioning at home, at school, and in the community[.]" *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(H)(3)(a).

Moreover, Defendant also persuasively argues that Plaintiff's citations to D.H.'s purported limitations with (a) understanding, remembering, or applying information pursuant to 112.00E1, and with (c) concentrating, persisting, or maintaining pace, pursuant to 112.00E3 do not take away from the aforementioned record evidence which the ALJ cited to in her decision. Indeed, the ALJ supported her conclusion by citing to evidence in the record, including Plaintiff's testimony; Plaintiff's written questionnaire; D.H.'s testimony; and D.H.'s IEP report, and relying on medical expert Dr. Wargel's testimony. Even if substantial evidence suggesting otherwise, this Court may not reverse the Commissioner's decision

merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). Here, the Court takes notice that four of Plaintiff's citations in support for her argument are from Ms. Vichinsky's report. *See* ECF No. 17, PageID.455. The Court explained in the previous section, however, that the ALJ was not required to give controlling weight to Ms. Vichinsky's opinion in her decision. *See Bourdo v. Commissioner of Social Security*, No. 1:06-CV-862, 2008 WL 724722, at \*3 (W.D. Mich. Mar. 17, 2008) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)).

Accordingly, this Court finds that substantial evidence supports the ALJ's findings that D.H.'s impairments do not meet or medically equal the requirements of Listing 112.05 (intellectual disability).

### B. The ALJ Properly Determined That Plaintiff Does Not Have an Impairment or Combination of Impairments That Functionally Equals the Listings

Plaintiff also argues that the ALJ's assessment of whether the D.H's impairments functionally equaled an impairment in the Listings, as assessed under the six domains found in 20 C.F.R. § 416.926a(a), is in error. ECF No. 17, PageID.458. Because the ALJ found D.H. to have a marked limitation in one domain, "acquiring and using information," Plaintiff must show that the ALJ's

17

decision that D.H. did not suffer from at least marked limitations in any one of the other domains is not supported by substantial evidence, or that the ALJ's decision that D.H. did not suffer from extreme limitations in even one of the six domains is not supported by substantial evidence.  Here, Plaintiff only objects to the ALJ's decision regarding two of the six domains: "acquiring and using information" and "attending and completing tasks."  ECF No. 17, PageID.458.

### 1. Acquiring and Using Information

The domain of "acquiring and using information" considers how well a child is able to acquire or learn information, and how well a child uses the information she has learned.  20 C.F.R. § 416.926a(g).  A school-aged child like D.H. should:

> be able to learn to read, write, and do math, and discuss history and science.  [The child] will need to use these skills in academic situations to demonstrate what [she] ha[s] learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions.  [The child] will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change).  [The child] should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).  20 C.F.R. § 416.926a also provides examples of limited functioning in this domain, including an inability to understand words about "space, size, or time"; an inability to rhyme words or the sounds in words; a difficulty recalling important things learned in school the previous day; a difficulty solving

mathematics questions or computing arithmetic answers; and a tendency to talk in short, simple sentences, as well as a difficulty explaining what they mean.  20 C.F.R. § 416.926a(g)(3)(i)-(iv).

The ALJ found a marked limitation in this domain.  ECF No. 12-2, PageID.61. The ALJ analyzed this domain as follows:

> The claimant has a marked limitation in acquiring and using information.  The claimant was found eligible for special education services for a speech and language impairment (Ex. B18E).  Ms. Hughes reported the claimant can answer the phone, understand oral instructions, express her own opinions, perform single step instructions, and write letters.  She can follow class rules and ask for permission. She can brush her teeth, bathe on her own, and eat a snack on her own. (Witness Testimony, Ex. B7E).  A January 2017 IEP report noted the claimant was cooperative and participated in class and completed assignments.  The examiner noted the claimant was making good progress in school and could stay on task.  (Ex. B18E/2-14).

*Id.*  Plaintiff argues that D.H. has an "extreme" impairment in this domain.  ECF No. 17, PageID.458–59.  An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  Plaintiff explains that "[f]or the reasons stated in [her first argument as to Listing 112.05], relative to Subparts B(2)(a) and (c), D.H.'s impairments should be found to be functionally equal Listed Impairment 112.05."  ECF No. 17, PageID.458–59.  She does not point to any specific errors in this section of her Motion.

The Court finds the ALJ's assessment of this domain is supported by substantial evidence, as argued by Defendant.  In making her findings on this domain, the ALJ gave significant weight to Plaintiff's testimony.  Plaintiff testified that D.H. could answer the phone, understand oral instructions, express her own opinions, perform single step instructions, and write her letters.  ECF No. 12-2, PageID.111–14.  Moreover, Plaintiff explained that D.H. could follow class rules, ask for permission, brush her teeth, bathe on her own, and eat a snack on her own. *Id.* at PageID.116–18.

The ALJ also considered the fact that a January 2017 IEP noted that D.H. was cooperative and participated in class and completed assignments.  *See* ECF No. 12-6, PageID.360.  The examiner also noted that D.H. was making "good progress, especially in Language Arts."  *Id.*  Moreover, the examiner highlighted that D.H. was able to stay on task.  *Id.*

The ALJ also discussed a Teacher Questionnaire from October 2017.  ECF No. 12-2, PageID.60.  The ALJ discussed this report before analyzing the specific domains.  *Id.*  While it is true the ALJ did not cite to the Reading and Math levels in this Questionnaire, the ALJ ultimately did not give significant weight to the entirety of the Questionnaire because the record supported greater limitations than what the teacher opined to.  *Id.*  "The undersigned accords little weight to [the Teacher Questionnaire] and the State agency psychological consultant's assessment because

the claimant would be more limited than initially determined." *Id.*  Nevertheless, the Court takes notice that D.H.'s teacher, Ms. Samara Taylor, observed D.H.'s independence in activities and ability to function "fine."  ECF No. 12-6, PageID.343. Finally, the Court denotes that Dr. Wargel opined that D.H. had a "marked" limitation in this domain, rather than an "extreme" limitation.  *See* ECF No. 12-2, PageID.95–96.  As discussed in the preceding section, the ALJ properly gave significant weight to Dr. Wargel's opinion in making her conclusions.

Based on the foregoing evidence, the Court agrees with Defendant that the ALJ's finding that D.H. had a marked, but not extreme, limitation in the "acquiring and using information" domain was supported by substantial evidence.  Because substantial evidence supports the ALJ's finding, Plaintiff's citation to other evidence in the record, even substantial evidence, to support the opposite conclusion is not sufficient for the Court to find reversible error.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (finding that the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

### 2.  Attending and Completing Tasks

The domain of "attending and completing tasks" considers how well a child is able to focus and maintain attention, and how well a child is able to begin, carry

through, and finish activities.  20 C.F.R. § 416.926a(h).  A school-aged child like

D.H. should:

> be able to focus [her] attention in a variety of situations in order to
> follow directions, remember and organize [her] school materials, and
> complete classroom and homework assignments.  [The child] should be
> able to concentrate on details and not make careless mistakes in [her]
> work (beyond what would be expected in other children [her] age who
> do not have impairments).  [The child] should be able to change [her]
> activities or routines without distracting [herself] or others, and stay on
> task in place when appropriate.  [The child] should be able to sustain
> [her] attention well enough to participate in group sports, read by
> [herself] and complete family chores.  [The child] should also be able
> to complete a transition ask (e.g., be ready for the school bus, change
> clothes after gym, change classrooms) without extra reminders and
> accommodation.

20 C.F.R. § 416.926a(g)(2)(iv).  20 C.F.R. § 416.926a also provides examples of

limited functioning in this domain, including being easily startled, distracted, or

overreactive to sounds, sights, movements, or touch; being slow to focus on or fail

to complete activities of interest; repeatedly becoming sidetracked from activities;

easily becoming frustrated and giving up on tasks; and requiring extra supervision

to remain engaged in an activity.  20 C.F.R. § 416.926a(h)(3)(i)-(v).

   The ALJ found that D.H. had a "less than marked limitation in attending and

completing tasks."  ECF No. 12-2, PageID.62.  The ALJ analyzed this domain as

follows:

> The claimant has less than marked limitation in attending and
> completing tasks.  The claimant reported she likes to play jump rope.
> (Claimant Testimony).  Ms. Hughes reported the claimant can answer
> the phone, understand oral instructions, express her own opinions,

perform single step instructions, and write letters.  She can follow class rules and ask for permission.  She can brush her teeth, bathe on her own, and eat a snack on her own.  (Witness Testimony, Ex. B7E).  A January 2017 IEP report noted the claimant was cooperative and participated in class and completed assignments.  The examiner noted the claimant was making good progress in school and could stay on task.  (Ex. B18E/2-14).

*Id.*  Plaintiff argues that this domain should have at least been a "marked limitation." ECF No. 17, PageID.459.  She maintains that the ALJ lacked substantial evidence for finding otherwise.  *Id.*  Similar to her arguments for the domain of "acquiring and using information," Plaintiff does not point to any specific errors in this section of her Motion as it relates to the instant domain.

The Court finds the ALJ's assessment of this domain is also supported by substantial evidence, as argued by Defendant.  The ALJ cites to D.H.'s testimony, as well as Plaintiff's testimony as to D.H.'s ability to perform and understand instructions, ability to follow class rules, and capacity to perform life skills individually.  Moreover, the ALJ took notice of the January 2017 IEP Report.  This report, as explained above, noted that D.H. was cooperative and participated in class and completed assignments.  *See* ECF No. 12-6, PageID.360.  Specifically, the examiner explained that D.H. is "cooperative, she participates in class and complete assignments."  *Id.* at PageID.361.  The examiner also highlighted that D.H. was able to stay on task.  *Id.*  The Court finds that the examiner's determinations that D.H. is "cooperative," capable of completing assignments, and able to "stay on task" are

especially illuminating for this domain, which specifically looks to a child's ability to focus and remain on task. *See* 20 C.F.R. § 416.926a(h)(3)(i)-(v). Moreover, the Court takes notice that the ALJ relied on Dr. Wargel's opinion that D.H. had a "less than marked" limitation in this domain. ECF No. 12-2, PageID.60 (citing ECF No. 12-2, PageID.96). The ALJ properly assigned weight to Dr. Wargel's opinion as it was consistent with the foregoing substantial evidence. *See Bailey ex rel. J.L.M. v. Comm'r of Soc. Sec.*, No. 12-cv-13159, 2013 WL 2295734, at *11 (E.D. Mich. May 24, 2013).

Based on the foregoing evidence, the Court agrees with Defendant that the ALJ's conclusion that D.H. had a less than marked limitation in the domain of "attending and completing tasks" was supported by substantial evidence. In sum, substantial evidence supports the ALJ's finding that D.H.'s impairments did not meet or medically equal any listings. Moreover, substantial evidence supports the ALJ's finding that D.H.'s impairments did not functionally equal any Listing.

## IV.    CONCLUSION

For the reasons discussed herein, the Court will **DENY** Plaintiff's motion [#17], **GRANT** Defendant's motion [#23], and **AFFIRM** the ALJ's decision.

**IT IS SO ORDERED.**

s/Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  August 25, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 25, 2020, by electronic and/or ordinary mail.

<u>/s/ Teresa McGovern</u>
Case Manager